IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DARRYL WILLIAMS<br>Plaintiff,<br><br>v.<br><br>CAPTAIN CAMPBELL; MAJOR<br>THOMAS J. BUZZAR; and, DEPUTY<br>MICHAEL A. LORENZO,<br>Defendants. | :<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: | CIVIL ACTION<br>NO. 07-885 |

**FILED**
JUL 1 8 2008
MICHAEL E. KUNZ, Clerk
By_____Dep. Clerk

## ORDER & MEMORANDUM

### ORDER

**AND NOW**, this 17th day of July, 2008, upon consideration of Defendants' Motion for Summary Judgment (Document No.18, filed September 11, 2007); Plaintiff's *pro se* Motion for Summary Judgment (Document No. 20, filed October 11, 2007); Defendants' Memorandum of Law in Response to Plaintiff's Motion for Summary Judgment (Document No. 22, filed October 16, 2007); and Plaintiff's *pro se* Counterclaims of Defendant [sic] Motion for Summary Judgment in Favor [of] the Plaintiff [F.R.C.P.56] [sic] (Document No. 23, filed October 26, 2007), for the reasons set forth in the attached Memorandum, **IT IS ORDERED** as follows:

1. Plaintiff Darryl Williams's Motion for Summary Judgment is **DENIED**;

2. Defendants Captain Campbell, Major Thomas J. Buzzar, and Deputy Michael A. Lorenzo's Motion for Summary Judgment is **GRANTED**; and

3. **JUDGMENT IS ENTERED** in **FAVOR** of defendants Captain Campbell, Major Thomas J. Buzzar, and Deputy Michael A. Lorenzo, and **AGAINST** plaintiff Darryl Williams.

## MEMORANDUM

I. **BACKGROUND**

A. **Factual Background**

On February 16, 2005, plaintiff, a state prisoner, was housed at the State Correctional Institution in Graterford, Pennsylvania ("SCI-Graterford") on the E Block. (Pl.'s Dep. 7, 11.) That morning, plaintiff was informed that he was being transferred to SCI-Coal Township the following day, February 17, 2005. (Id. 13-14.) Later in the day on the 16th, plaintiff asked to see a doctor for back pain. (Id. 14.) Plaintiff was taken to the infirmary to be examined by a doctor. While at the infirmary, plaintiff saw defendant Captain Stephen Campbell. (Id.) After being told by the doctor that plaintiff had a back problem, defendant Campbell told plaintiff to stop faking an injury to avoid being transferred to SCI-Coal Township because he would be transferred anyway. (Id. 14-15; Defs.' Mot. for Summ J. 2.) Plaintiff responded that he was not faking and really did have a back problem. Defendant Campbell told plaintiff that he did not believe him and placed plaintiff in administrative segregation in an observation cell or "hard cell" in the infirmary. (Pl.'s Dep. 15; Defs.' Mot. for Summ. J. 2.)

Plaintiff remained in the observation cell overnight and was released back to his housing unit on the morning of February 17, 2005. (Pl.'s Dep. 18-19; Defs.' Mot. for Summ. J. 2.) On the afternoon of February 17, plaintiff was removed from his cell by an unidentified lieutenant and taken to see defendant Campbell. Defendant Campbell had plaintiff placed back in the observation cell, where he remained until February 21, 2005. (Pl.'s Dep. 19-20; Defs.' Mot. for Summ. J. 2.)

2

On February 23, 2005, plaintiff filed an inmate grievance alleging mistreatment by defendant Campbell in relation to his placement in the observation cell and the conditions of that cell. (Ex. 4 to Pl.'s Mot. for Summ. J.) Defendant Major Thomas Buzzar investigated plaintiff's allegations and denied the grievance. Defendant Buzzar concluded that plaintiff faked a back injury to avoid being transferred to SCI-Coal Township and noted that defendant Campbell denied plaintiff's allegations of having no mattress or eating utensils in the observation cell. (Id.) Defendant Buzzar stated that the "only merit to this grievance is the fact that [defendant Campbell] failed to write an Administrative Custody report when he placed you in the observation cell on 2/1[6]/05. I have taken corrective action in regards to this point." (Id.)

On February 24, 2005, plaintiff was transferred to SCI-Coal Township. (Pl.'s Dep. 10, 20; Defs.' Mot. for Summ. J. 2.)

### B. Procedural History

In this *pro se* action under 42 U.S.C. § 1983, plaintiff alleges that the circumstances of his placement in the observation cell and the conditions he was exposed to in that cell violated his Eighth and Fourteenth Amendment rights. With respect to his Eighth Amendment claim, plaintiff asserts that defendant Campbell violated his Eighth Amendment rights by placing him in the observation cell because the conditions in the cell constituted cruel and unusual punishment. Specifically, plaintiff alleges that he did not have a mattress in the cell and was provided with only "half of a blanket," which was inadequate because "there was no heat in the cell." (Compl. ¶ 5.) Plaintiff further alleges that he was not given any eating utensils and that he was not allowed to take a shower. (Compl. ¶ 4.) Plaintiff claims that defendants Lorenzo and Buzzar are liable for the violation of his Eighth Amendment rights because they allowed this mistreatment of plaintiff to take place. (Compl. ¶ 5.)

With respect to his Fourteenth Amendment claim, plaintiff asserts that defendant Campbell violated his due process rights when he placed plaintiff in the observation cell without writing a misconduct report, and thus "without notice of the charges within 24 hours in accord to D.O.C. policy (AC-ADM 801)." (Pl.'s Letter to the Court dated 6/29/07; Pl.'s Mot. for Summ. J. 4; see also Compl. ¶ 5.)[1] Plaintiff asserts that defendant Deputy Michael A. Lorenzo violated plaintiff's Fourteenth Amendment rights by agreeing with defendant Campbell to place plaintiff in the observation cell on February 16, 2005, and back in the observation cell on February 17, 2005, without a misconduct report being written. (Pl.'s Letter to the Court dated 6/29/07; Pl.'s Mot. for Summ. J. 5; see also Compl. ¶ 5.) Finally, plaintiff alleges that defendant Major Thomas Buzzar violated his Fourteenth Amendment rights in addressing plaintiff's inmate grievance concerning his placement and treatment in the observation cell. Specifically, plaintiff alleges that defendant Buzzar acted with "deliberate indifference" in preparing his investigation report on plaintiff's grievance by not stating the true conditions of the observation cell and by not specifying what corrective action was taken against defendant Campbell for his failure to provide plaintiff with a misconduct report. (Pl.'s Letter to the Court dated 6/29/07; Pl.'s Dep. 29.)

The parties filed cross-motions for summary judgment. In their Motion for Summary Judgment and their Response to Plaintiff's Motion for Summary Judgment, defendants argue that defendants Buzzar and Lorenzo are entitled to summary judgment on all of plaintiff's claims because they lacked "any personal involvement in the alleged violations of [plaintiff's] constitutional rights," as is required for liability under 42 U.S.C. § 1983. (Defs.' Mot. for Summ.

---

[1] A copy of plaintiff's letter to the Court dated 6/29/07 shall be docketed by the Deputy Clerk.

4

J. 3-4.) As to all defendants, defendants argue that they are entitled to summary judgment on plaintiff's Eighth Amendment claim because plaintiff cannot prove that he was "deprived of 'the minimal civilized measure of life's necessities.'" (Id. 7 (citing Young v. Quinlan, 960 F.2d 351, 359 (3d Cir. 1992)). As to plaintiff's Fourteenth Amendment claim, defendants argue that they are entitled to summary judgment because plaintiff's "confinement away from the general prison population for six days did not violate his due process rights." (Defs.' Mot. for Summ. J. 5.) Specifically, defendants argue that placing plaintiff into administrative segregation for this period did not implicate any liberty interest such that plaintiff could succeed on a due process claim. (Id. 5-6.)

In his Motion for Summary Judgment and his response to defendants' Motion for Summary Judgment, plaintiff reiterates the assertions of the Complaint. He also argues that defendant Buzzar's investigation report reveals that each defendant had knowledge of and participated in the deprivation of plaintiff's civil rights. (Pl.'s Mot. for Summ. J. 2.)

## II. STANDARD OF REVIEW

A court should grant summary judgment if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). A "genuine" issue exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A factual dispute is "material" when it "might affect the outcome of the suit under the governing law." Id. In considering a motion for summary judgment, the "facts must be viewed in the light most favorable to the party opposing summary judgment."

5

Int'l Raw Materials, Ltd. v. Stauffer Chem. Co., 898 F.2d 946, 949 (3d Cir. 1990). The party opposing the motion, however, cannot "rely merely upon bare assertions, conclusory allegations, or suspicions" to support its claim. Fireman's Ins. Co. v. DuFresne, 676 F.2d 965, 969 (3d Cir. 1982).

### III. DISCUSSION

#### A. Eighth Amendment Claim

"The Eighth Amendment prohibits any punishment which violates civilized standards of humanity and decency." Griffin v. Vaughn, 112 F.3d 703, 709 (3d Cir. 1997) (citing Young v. Quinlan, 960 F.2d 351, 359 (3d Cir. 1992), *superseded by statute on other grounds as stated in* Ghana v. Holland, 226 F.3d 175, 184 (3d Cir. 2000)). To establish a violation of the Eighth Amendment, "an inmate must allege both an objective element - that the deprivation was sufficiently serious - and a subjective element - that a prison official acted with a sufficiently culpable state of mind, i.e., deliberate indifference." Nami v. Fauver, 82 F.3d 63, 67 (3d Cir. 1996) (citing Wilson v. Seiter, 501 U.S. 294 (1991)). "Only if the harm suffered is sufficiently serious does the court then turn to analyze the subjective element" of the Wilson test. Dantzler v. Beard, 2007 WL 5018184, at *10 (W.D. Pa. Dec. 6, 2007 (citing Fuentes v. Wagner, 206 F.3d 335, 344 (3d Cir. 2000)).

To satisfy the first prong of the Wilson test, "an inmate must show that he has been deprived of 'the minimal civilized measure of life's necessities.'" Griffin, 112 F.3d at 709 (citing Young, 960 F.2d at 359 (citing Rhodes v. Chapman, 452 U.S. 337, 347 (1981))). "[R]outine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society,'" and thus "extreme deprivations are required to make out a conditions-of-confinement claim."

6

Hudson v. McMillian, 503 U.S. 1, 9 (1992) (citing Rhodes, 452 U.S. at 347). Conditions are to be evaluated independently unless "they have a mutually enforcing effect that produces the deprivation of a single, identifiable human need such as food, warmth, or exercise." Wilson, 501 U.S. at 304.

### 1. Mattress

Plaintiff testified at his deposition that he was not provided with a mattress to sleep on and thus had to sleep on the floor for the five nights he spent in the observation cell. (Pl.'s Dep. 18.) However, numerous courts in this circuit have concluded that failure to provide an inmate with a mattress for a limited number of days does not constitute cruel and unusual punishment. See, e.g., Schaeffer v. Schamp, 2008 WL 2553474, at *6 (W.D. Pa. June 25, 2008) (confinement in hard cell for ten days without a mattress does not constitute cruel and unusual punishment); Castro v. Chesney, 1998 WL 767467, at *8 (E.D. Pa. Nov. 3, 1998) (deprivation of mattress for two days would not rise to a level of a constitutional violation); Collins v. Klotz, 1994 WL 371479, at *5 (E.D. Pa. June 24, 1994) (temporary denial of a bed does not threaten the life of an inmate and thus does not rise to the level of a constitutional violation). Because plaintiff was deprived of a mattress for at most five days, and because plaintiff has not alleged any injury resulting from this deprivation of a mattress, the Court concludes that plaintiff cannot establish a constitutional violation on the basis of this deprivation.

### 2. Heat and Proper Blanket

Plaintiff also testified at his deposition that he was provided with only half of a blanket while in the observation cell and that there was no heat in the cell. (Pl.'s Dep. 19, 25.) Because these conditions have a "mutually enforcing effect that produces a deprivation of a single,

identifiable human need, . . . warmth," Wilson, 501 U.S. at 304, the Court will consider these conditions together.

In Burkholder v. Newton, the Third Circuit stated that "[i]t is questionable if having a cold cell . . . is really an 'atypical and significant hardship . . . in relation to the ordinary incidents of prison life'" because courts "have found that the Eighth Amendment is not violated in much more harsh conditions." 116 Fed. App'x 358, 363 (3d Cir. 2004) (citing Sandin v. Conner, 515 U.S. 472, 484 (1995)).[2] The combination of a cold cell and the lack of a blanket, however, may, in certain circumstances, be sufficient to establish the objective element of an Eighth Amendment violation. Wilson, 501 U.S. at 304.

The Court does not have before it evidence of the temperature in the observation cell during the period of February 16, to February 21, 2005, and thus cannot determine whether the deprivation of warmth plaintiff experienced due to the combination of a low temperature and a small blanket was severe enough to establish a constitutional violation. See Deputy v. Taylor, 2003 WL 361216 (D. Del. Feb. 19, 2003) (stating that "[o]nly in the most extreme cases does the lack of heat rise to the level of a constitutional violation") (citing Dixon v. Godinez, 114 F.3d 640 (7th Cir. 1997) (holding that summary judgment was improper when inmate alleged ice formed on cell walls during winter for several years as a result of inadequate heating)). For purposes of addressing defendants' Motion for Summary Judgment, the Court will assume without deciding that the deprivation of warmth was severe enough to constitute a deprivation of "the minimal civilized measure of life's necessities," Griffin, 112 F.3d at 709 (citing Young, 960 F.2d at 359), such that plaintiff has met the first, objective prong of the Wilson test.

---

[2] This unpublished opinion has no precedential value under § 5.7 of the Internal Operating Procedures of the Third Circuit, but the Court finds it instructive.

Plaintiff still cannot succeed on this Eighth Amendment claim, however, because he has offered no evidence of the second, subjective prong of the Wilson test - "that a prison official acted with a sufficiently culpable state of mind, i.e., deliberate indifference." Nami, 82 F.3d at 67 (citing Wilson, 501 U.S. at 305). Plaintiff does not allege that he complained about the cold temperature or about the insufficiency of the blanket during his time in the observation cell, nor has he produced any evidence suggesting that defendants knew about these conditions. On that issue, the only evidence produced was defendant Campbell's answer to plaintiff's Interrogatory # 23: "Why was there no heat in the cell on the days in question?" Defendant Campbell answered that interrogatory by stating: "Assuming that you are correct, I do not know why." (Pl.'s Interrogs. to Def. Campbell 3; Def. Campbell's Answers to Pl.'s Interrogs. 2.) In short, there is no evidence that defendant Campbell, or either of the other defendants, knew of the lack of heat and a proper blanket while plaintiff was in the observation cell.

In the absence of any evidence that defendants had any knowledge of the alleged lack of heat and a proper blanket in the observation cell, no reasonable jury could find that defendants acted with "deliberate indifference" to plaintiff's well-being and constitutional rights. Nami, 82 F.3d at 67 (citing Wilson, 501 U.S. at 305); see also Castro, 1998 WL 767467, at *15 (holding that there was no genuine issue of material fact as to the deliberate indifference of defendant prison officials regarding the alleged lack of heat in the plaintiff prisoner's cell where the plaintiff made no allegation that he informed the defendants or any other member of the prison staff that his cell was inadequately heated). Thus, defendants are entitled to summary judgment on plaintiff's Eighth Amendment claim based on a deprivation of heat and a proper blanket. Anderson, 477 U.S. at 248.

### 3. Eating Utensils

Plaintiff also testified at his deposition that his Eighth Amendment rights were violated because, while in the observation cell, he was not given any eating utensils and had to eat with his hands. (Pl.'s Dep. 17, 20.) Plaintiff admits, however, that he was given three meals a day while in the observation cell. (Pl.'s Dep. 20.)

As stated by the Supreme Court, "routine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society,'" and thus "extreme deprivations are required to make out a conditions-of-confinement claim." Hudson, 503 U.S. at 9 (citing Rhodes, 452 U.S. at 347). "'Mere inconvenience or discomfort' while eating in prison does not state an Eighth Amendment claim." Shomo v. New York Dep't of Corr. Servs., 2007 WL 2580509, at *13 (N.D.N.Y. Sept. 4, 2007) (citing Powell v. Kingston, 2005 WL 752233, at *3 (W.D. Wis. March 29, 2005)). Plaintiff's allegations, and his deposition, reveal that he "was able to consume his food without utensils, though less neatly than may be desired." Powell, 2005 WL 752233, at *3. Under such circumstances, the Court cannot conclude that plaintiff was "deprived of the minimal civilized measure of life's necessities," Griffin, 112 F.3d at 709 (internal citations omitted), as is required to establish an Eighth Amendment violation.

### 4. Shower

Finally, plaintiff testified at his deposition that he was not permitted to shower while in the observation cell. (Pl.'s Dep. 21.) However, the denial of a shower for a limited period of time does not violate the Eighth Amendment. See, e.g., Gay v. Shannon, 211 Fed. App'x 113, 116 (3d Cir. 2006) (holding that restriction from taking showers while plaintiff prisoner was

attending and testifying at a federal trial was insufficient to state an Eighth Amendment claim);[3] Ebersole v. Pennsylvania, 2007 WL 2815730, at *10 (M.D. Pa. Sept. 25, 2007) (holding that denial of showers for ten days while in the restricted housing unit did not rise to the level of an Eighth Amendment violation). Plaintiff was denied showers for, at most, six days while in the observation cell. Such a limited deprivation is insufficient to establish an Eighth Amendment violation and defendants are entitled to summary judgment on this claim.

## 5. Evidence of Conditions of Segregation Not Included in the Complaint

In his deposition and his Motion for Summary Judgment, plaintiff complains of additional deprivations that he experienced in the observation cell beyond those described in the Complaint. Specifically, plaintiff testified at his deposition that he was not allowed to go into the yard for exercise, nor was he given a towel, soap, toilet paper, or a pillow while in the observation cell. (Pl.'s Dep. 20-21, 25-26.) Plaintiff admitted, however, that there was a functioning toilet and running water in the observation cell. (Pl.'s Dep. 21-22.) Additionally, plaintiff asserted in his Motion for Summary Judgment that he was not given toothpaste or a wash rag while in the observation cell. (Pl.'s Mot. for Summ. J. 6.) Although plaintiff's allegations concerning the denial of exercise and the lack of a pillow, a towel, and hygiene products in the observation cell are "not properly before the Court, having not been pled by Plaintiff . . . , the Court will nonetheless address" plaintiff's claims because plaintiff "is *pro se* and his pleadings must be liberally construed." Castro, 1998 WL 767467, at *10 (citing Haines v. Kerner, 404 U.S. 519, 520 (1972)).

---

[3] This unpublished opinion has no precedential value under § 5.7 of the Internal Operating Procedures of the Third Circuit, but the Court finds it instructive.

First, plaintiff testified at his deposition that he was not given a pillow while in the observation cell. (Pl.'s Dep. 25.) Denial of a pillow for five nights, however, does not constitute cruel and unusual punishment under the Eighth Amendment. See, e.g., Bauer v. Sielaff, 732 F. Supp. 1104, 1110 (E.D. Pa. 1974) (holding that deprivation of pillow for seven to ten days does not constitute a constitutional deprivation); Samuel v. Carroll, 2005 WL 2340751, at *2 (D. Del. Sept. 23, 2005) (holding that denial of pillow for a period of time without a claim of serious harm does not satisfy objective prong of test for Eighth Amendment violation). Further, even assuming that the combined deprivation of a pillow and a mattress satisfies the objective prong of the Wilson test, plaintiff still cannot succeed on this Eighth Amendment claim because he has offered no evidence of the second, subjective prong of the Wilson test - "that a prison official acted with a sufficiently culpable state of mind, i.e., deliberate indifference." Nami, 82 F.3d at 67 (citing Wilson, 501 U.S. at 305).

Second, plaintiff testified at his deposition that he was not allowed to go into the yard for exercise while in administrative segregation. (Pl.'s Dep. 20-21.) The Third Circuit has recognized that "meaningful recreation is extremely important to the psychological and physical well-being of prisoners." Peterkin v. Jeffes, 855 F.2d 1021, 1031 (3d Cir. 1988) (internal citation omitted). "Lack of exercise may amount to a constitutional violation where it poses a significant threat to an inmate's physical and mental well-being. For example, lack of exercise may constitute cruel and unusual punishment where 'movement is denied and muscles are allowed to atrophy.'" Platt v. Brockenborough, 476 F. Supp. 2d 467, 471–72 (E.D. Pa. 2007) (citing French v. Owens, 777 F.2d 1250, 1255 (7th Cir. 1985); Antonelli v. Sheahan, 81 F.3d 1422, 1432 (7th Cir. 1996) (allegation of denial of exercise for seven weeks at a time stated claim for Eighth Amendment violation)).

12

Plaintiff has not asserted, nor provided any evidence, that the denial of exercise for a period of six days was injurious to his health in any way. Courts in this circuit have held that deprivation of exercise for a limited period of time without evidence of resulting harm to the plaintiff prisoner does not violate the Eighth Amendment. See, e.g., Castro, 1998 WL 767467, at *12 (holding that deprivation of exercise for "several days" without evidence of "a tangible physical harm which resulted from the denial of exercise" did not rise to the level of a constitutional violation); Bensinger v. Capt. 2 to 10:00 on Feb. 18, 94, 1995 WL 30609, at *2 (E.D. Pa. Jan. 18, 1995) (holding that deprivation of exercise for four days without any allegation of resulting harm to plaintiff prisoner did not rise to the level of an Eighth Amendment violation). In light of the short duration of the time period during which plaintiff was deprived exercise, and in the absence of any evidence of physical harm resulting from the deprivation, the Court concludes that plaintiff did not suffer a sufficiently serious deprivation of exercise to establish an Eighth Amendment violation.

Third, plaintiff testified at his deposition that he was not provided with toilet paper while in the observation cell. (Pl.'s Dep. 26.) Plaintiff admitted, however, that there was a functioning toilet and running water in the cell. (Pl.'s Dep. 21-22.) The "deprivation of personal hygiene items can be sufficient to make out a constitutional violation based upon the extent of the violation and the nature of the items withheld." Castro, 1998 WL 767467, at *9 (citing Carver v. Bunch, 946 F.2d 451, 452 (6th Cir. 1991); Chandler v. Baird, 926 F.2d 1057, 1064-65 (11th Cir. 1991)). However, the denial of toilet paper for a limited number of days is not sufficient to state a constitutional violation. See Castro, 1998 WL 767467, at *9 (holding that denial of toilet paper for "a few days" is not sufficient to state a constitutional violation); Briggs v. Heidlebaugh, 1997

13

WL 318081, at *2 (E.D. Pa. May 22, 1997) (holding that denial of toilet paper for two days does not infringe upon a prisoner's constitutional rights); Harris v. Fleming, 839 F.2d 1232, 1235-36 (7th Cir. 1988) (holding that inmate who did not receive toilet paper for five days did not assert an Eighth Amendment claim). Plaintiff was denied toilet paper for at most six days, an insufficient amount of time to establish a constitutional violation.

Finally, plaintiff testified at his deposition and asserted in his Motion for Summary Judgment that, although there was running water in the observation cell, he was not provided with various personal hygiene items while in the cell: a towel, wash rag, soap, and toothpaste. (Pl.'s Dep. 21; Pl.'s Mot. for Summ. J. 6.) As noted above, the "deprivation of personal hygiene items can be sufficient to make out a constitutional violation based upon the extent of the violation and the nature of the items withheld." Castro, 1998 WL 767467, at *9 (internal citations omitted). However, the deprivation of personal hygiene items for a limited number of days does not violate the Eighth Amendment. See, e.g., Matthews v. Murphy, 1992 WL 33902, at *4 (9th Cir. Feb. 25, 1992) (no Eighth Amendment violation where inmate was deprived of a towel, toothbrush, toothpaste, and soap for thirty-four days); Castro, 1998 WL 767467, at *10 (holding that deprivation of towels, soap, toothbrush, and toothpaste for two days was not sufficiently serious to rise to the level of a constitutional violation); Mincy v. Chmielewski, 2007 WL 707344, at *10 (M.D. Pa. March 2, 2007) (holding that deprivation of personal hygiene items including a towel, a washcloth, soap, and toothpaste for a few days did not violate the Eighth Amendment). Plaintiff was deprived of a towel, wash rag, soap, and toothpaste for at most six days. A deprivation of this limited duration is not sufficiently serious to rise to the level of a constitutional violation.

14

B.       **Fourteenth Amendment Claim**

To succeed on a due process claim, plaintiff must first demonstrate that he was deprived of a liberty interest when he was placed in administrative custody in the observation cell. Fraise v. Terhune, 283 F.3d 506, 522 (3d Cir. 2002). Protected liberty interests "generally arise either from the Due Process Clause or from state-created statutory entitlement." Id. (quoting Shoats v. Horn, 213 F.3d 140, 143 (3d Cir. 2000)). As to liberty interests arising from the Due Process Clause, "[t]he Supreme Court has recognized that '[a]s long as the conditions or degree of confinement to which the prisoner is subjected is within the sentence imposed upon him and is not otherwise violative of the Constitution, the Due Process Clause does not in itself subject an inmate's treatment by prison authorities to judicial oversight.'" Fraise, 283 F.3d at 522 (quoting Asquith v. Dep't of Corrections, 186 F.3d 407, 410 (3d Cir. 1999) (quoting Hewitt v. Helms, 459 U.S. 460, 468 (1983))). With regards to state-created liberty interests, the Third Circuit has summarized the controlling principles as follows:

> In Sandin v. Conner, 515 U.S. 472, 484, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995), the Supreme Court set out the standard for determining whether a prisoner has been deprived of a state-created liberty interest. These interests are "generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, ... nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Id.; see also Shoats, 213 F.3d at 143; Asquith, 186 F.3d at 412. In ascertaining whether something is an "atypical and significant" hardship, we must consider "what a sentenced inmate may reasonably expect to encounter as a result of his or her conviction in accordance with due process of law." Asquith, 186 F.3d at 412 (quoting Griffin v. Vaughn, 112 F.3d 703, 706 & n.2 (3d Cir. 1997)). Consequently, the focus of this inquiry should not be on the language of a particular regulation, but rather on the nature of the deprivation. See Sandin, 515 U.S. at 481-82, 115 S.Ct. 2293.

Fraise, 283 F.3d at 522.

15

### 1. Defendants Campbell and Lorenzo

Plaintiff asserts that defendant Campbell violated his due process rights when he placed plaintiff in the observation cell without writing a misconduct report and that defendant Lorenzo joined in this violation by agreeing with defendant Campbell to place plaintiff in the observation cell on February 16, 2005, and back in the observation cell on February 17, 2005, without a misconduct report being written. (Pl.'s Letter to the Court dated 6/29/07; Pl.'s Mot. for Summ. J. 4-5; see also Compl. ¶ 5.) The Court rejects this claim. Plaintiff cannot succeed on his due process claim against defendants Campbell and Lorenzo because he has not demonstrated that he was deprived of a liberty interest when he was placed in administrative custody in the observation cell. Fraise, 283 F.3d at 522.

First, plaintiff's placement in administrative segregation in the observation cell did not deprive him of a liberty interest arising in the Due Process Clause itself. As explained by the Third Circuit in Torres v. Fauver, 292 F.3d 141, 150 (3d Cir. 2002), "[b]ecause disciplinary detention and 'administrative segregation [are] the sort[s] of confinement that inmates should reasonably anticipate receiving at some point in their incarceration,' . . . transfer to 'less amenable and more restrictive quarters' [does] not implicate a liberty interest protected by the Due Process Clause." (Citing Hewitt v. Helms, 459 U.S. 460, 468 (1983); Fraise, 283 F.3d at 522). Further, the Court has determined that the conditions of plaintiff's confinement in the observation cell did not violate plaintiff's Eighth Amendment rights, and thus "[n]o liberty interest traced from the Due Process Clause" is violated due to the conditions of confinement violating the Constitution. Torres, 292 F.3d at 150 (citing Fraise, 283 F.3d 522).

16

Finally, plaintiff cannot demonstrate that he was deprived of a state-created liberty interest for purposes of establishing a due process violation. In Torres, the Third Circuit noted that, in determining whether a prisoner has been deprived of a state-created liberty interest, "Sandin instructs that whether the restraint at issue 'imposes atypical and significant hardship' depends on the particular state in which the plaintiff is incarcerated." 292 F.3d at 151 (citing Sandin, 515 U.S. at 486). In Griffin, the Third Circuit held that because, in the Pennsylvania correctional system, "stays of many months [in administrative custody] are not uncommon," a Pennsylvania prisoner's confinement in administrative custody for a period as long as fifteen months did not deprive the prisoner of a protected liberty interest such that he was entitled to procedural due process protection. 112 F.3d at 708. Because plaintiff was in administrative custody in the observation cell for only six days, significantly shorter than the fifteen months approved of in Griffin, plaintiff's confinement in that cell did not deprive him of a state-created liberty interest. Thus, defendants Campbell and Lorenzo are entitled to summary judgment on this claim.

### 2. Defendant Buzzar

Plaintiff alleges that defendant Major Thomas Buzzar violated his Fourteenth Amendment rights because of the way in which he addressed plaintiff's inmate grievance concerning his placement and treatment in the observation cell. Specifically, plaintiff alleges that defendant Buzzar acted with "deliberate indifference" in preparing his investigation report on plaintiff's grievance by not stating the true conditions of the observation cell and by not specifying what corrective action was taken against defendant Campbell for his failure to provide plaintiff with a misconduct report, and thus violated his Fourteenth Amendment rights. (Pl.'s Letter to the Court dated 6/29/07; Pl.'s Dep. 29.) However, because the Court concludes that

17

plaintiff was not deprived of a liberty interest by being placed and held in administrative custody for six days, plaintiff was not entitled to procedural due process protection and a complaint based upon dissatisfaction with the process that plaintiff was given cannot succeed. Griffin, 112 F.3d at 708. Thus, defendant Buzzar is entitled to summary judgment on plaintiff's Fourteenth Amendment claim.

### C. Access to the Law Library

While not addressed in the motion papers, plaintiff also alleges that during his time in the observation cell, he "was refused access to the law library witch [sic] hinder[ed] my preparation for the counts." (Compl. ¶ 4.) The Court interprets the word "counts" to mean "courts." "To state an access to the courts claim, a prisoner must demonstrate that the underlying claim was 'arguable' and 'nonfrivolous,' describe the official acts frustrating the litigation, and identify a remedy that could not otherwise be obtained." Falciglia v. Erie County Prison, 2008 WL 2175301, at *2 (3d Cir. May 27, 2008) (citing Christopher v. Harbury, 536 U.S. 403, 415 (2002)). Plaintiff does not, in any filing or in his deposition, provide any details about the court appearances he wanted to prepare for, describe any acts by the defendant prison officials frustrating specific litigation, or identify any actual injury he suffered based on this alleged deprivation of access to the law library. Thus, plaintiff's allegation is insufficient to establish a violation of plaintiff's constitutional right of access to the courts and defendants are entitled to summary judgment on this claim.

### IV. CONCLUSION

For the foregoing reasons, the Court concludes that defendants are entitled to summary judgment on all of plaintiffs' claims. Thus, the Court denies Plaintiff's Motion for Summary Judgment, grants defendants' Motion for Summary Judgment, and enters judgment in favor of

defendants, Captain Campbell, Major Thomas J. Buzzar, and Deputy Michael A. Lorenzo, and against plaintiff, Darryl Williams.

BY THE COURT:

*Jan E. DuBois*
JAN E. DUBOIS, J.

7/18/08 1st class /cert.
WILLIAMS

7/17/08 faxed
Honzes